RALPH L. PHELPS, JR. and RUTH M. PHELPS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Phelps v. Commissioner
Docket No. 729-72.
United States Tax Court
T.C. Memo 1974-205; 1974 Tax Ct. Memo LEXIS 116; 33 T.C.M. (CCH) 917; T.C.M. (RIA) 74205; August 5, 1974, Filed. *116 Alvin G. Buchignani, for the petitioners. Nicholas G. Stucky, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION The Commissioner determined a deficiency of $12,032 in petitioners' income tax for the calendar year 1968. The parties have reached an agreement in respect of each of the matters raised in the deficiency notice, leaving for decision only the propriety of the Commissioner's disallowance of petitioners' refund claim relating to the same taxable year. At issue is a single factual question: at the time it was made, what was the fair market value of a $2,000,000, 5 year, 4 percent promissory note secured by a deed of trust to a 3,900 acre tract of land? FINDINGS OF FACT The parties have filed stipulations of facts which, together with accompanying exhibits, are incorporated herein by this reference. Petitioners Ralph L. Phelps, Jr. ("petitioner") and his wife, Ruth M. Phelps, timely filed a joint Federal income tax return in 1968 with the district director of internal revenue at San Francisco, California. On or about February 27, 1971, petitioners filed with the Commissioner a claim for refund of a portion of their joint income taxes *117 paid for the year 1968. Petitioners' legal residence at the time of filing the petition herein was in Berkeley, California. In 1959, petitioner and one Phillips S. Schneider first became interested in purchasing a tract of approximately 4,500 acres of land in Santa Clara County, California, known as the Almaden Property, long a source of cinnabar, the principal ore or mercury. They subsequently brought together a group of six other individuals who, together with Schneider only, entered a "Partnership Agreement" for this purpose on or about September 20, 1960, adopting the name "Almaden Property Holders". According to the terms of the agreement, Schneider's percentage interest in Almaden Property Holders for all purposes was 25.9240113 percent. Pursuant to the allowable terms of the agreement, Schneider, on or about the same day, entered into a second "Partnership Agreement" with six other individuals (among whom was petitioner but not any of the Almaden Property Holders), for the purpose of sharing the profits and losses of, and distributions to, Schneider under the Almaden Property Holders agreement. Petitioner's gross interest in the second group, named "New Almaden Property *118 Investors", was for all purposes 27.3617428 percent, 9.6 percent of which was allocable to petitioner's joint venturer, Jean Crago, who was not a primary member of the group. Thus, petitioner's net interest in New Almaden Property Investors was 24.7350155 percent. [1] By reason of this arrangement, petitioner held a 6.4123082 percent interest in any profit or loss of Almaden Property Holders. [2]
In late 1960, Almaden Property Holders acquired the Almaden property. Almaden Property Holders thereupon allowed a number of independent groups to mine cinnabar from various locations in return for a royalty on their ore production. In 1968, during which year Almaden Property Holders owned the land for approximately ten months, it received gross royalties *119 of $67,839 and net royalty income of $27,961. After several unsuccessful attempts prior to 1968 to divest itself of the property, Almaden Property Holders sold the Almaden Property in 1968 to New Idria Mining and Chemical Company ("New Idria"), a Nevada corporation, for a total purchase price of $5,000,000. Pursuant to the terms of the sale, New Idria paid Almaden Property Holders $3,000,000 cash and delivered its promissory note dated November 4, 1968, in the face amount of $2,000,000, principal payable at the end of five years, with interest at four percent per annum, payable semi-annually, and secured by a deed of trust to a portion of the Almaden Property. The note was captioned "Note Secured By Deed of Trust". The deed of trust securing the note pertained to only 3,900 acres, approximately, of the Almaden Property; the unencumbered remainder, approximately 600 acres of unminded land, was considered very desirable on account of its proximity to the Almaden Golf Course and its potential for residential home development. In addition, the deed of trust did not contain an acceleration clause or a "due on sale" clause, thus enabling New Idria, had it wished to do so, to sell the *120 encumbered property, subject to the encumbrance, without giving Almaden Property Holders the right thereupon to demand immediate payment of the principal amount. Although the note itself contained no provision for attorneys' fees, New Idria covenanted in the deed of trust to pay all costs and expenses, including the cost of evidence of title and reasonable attorneys' fees, in any foreclosure action brought by Almaden Property Holders or its successors. At the time the note and deed of trust were executed, there were no other mortgages or deeds of trust outstanding against the Almaden Property; at all times here pertinent, the deed of trust remained the senior encumbrance. After purchasing the Almaden Property, New Idria itself mined the property. During the period prior to the maturity of its note, New Idria made timely interest payments, and in 1973 it caused the note to be cancelled by paying Almaden Property Holders the entire amount then due ($2,000,000 less principal amounts previously paid). Pursuant to the terms of te deed of trust, New Idria made timely payment of all property taxes assessed against the Almaden Property with the exception of two installments which were *121 paid later. Almaden Property Holders filed a Federal partnership tax return in 1968 in which it reported the gross sales price of the Almaden Property at $5,000,000, resulting in a total gain for Federal tax purposes of $4,388,402. Of this amount, $1,137,651 was listed as Schneider's share. Similarly, New Almaden Property Investors filed a Federal partnership tax return in 1968 in which it reported $1,137,651, Schneider's share of Almaden Property Holders' gain, as capital gain income from Almaden Property Holders. Petitioner's gross share of this amount was $311,261.31. On their joint Federal income tax return petitioners reported petitioner's share of the capital gain as shown in the partnership return, reduced by $20,822 of associated expenses over his partnership basis. From the remaining $290,439 they subtracted the 9.6 percent interest in petitioner's share held by Jean Crago, leaving a net capital gain of $262,557. Petitioners, as well as Almaden Property Holders and New Almaden Property Investors, were on the cash basis at all times relevant herein. Although no amended Federal partnership return for 1968 was filed by, or on behalf of, either Almaden Property Holders *122 or New Almaden Property Investors, on or about February 27, 1971, petitioners filed a claim for refund in respect of their taxes paid for 1968 arising from the sale of the Almaden Property. It was their contention that at the time of its execution the fair market value of the note received from New Idria was only $1,536,696, rather than its face value. By reason of the corrected calculations, petitioners concluded that their share of the gain on the sale was $29,707 less than they originally had reported. The Commissioner disallowed their refund claim in full. On or about October 29, 1971, the Commissioner mailed to petitioners a notice of deficiency in respect of their taxable year ended December 31, 1968. The adjustments resulting in the computation of that deficiency were based upon items unrelated to the matter covered by the claim for refund. On or about January 31, 1972, petitioners filed their petition herein in which they contested the adjustments made in the deficiency notice and in which they alleged further that the Commissioner had erroneously disallowed their claim for refund. Prior to the trial, all of the issues raised in the deficiency notice were settled by *123 the parties, leaving only the question concerning the alleged overassessment. The $2,000,000 note of New Idria had a fair market value of $1,600,000 at the time it was issued. OPINION RAUM, Judge: The only remaining issue in this case presents purely a question of fact, namely, the fair market value at the time of issuance of New Idria's $2,000,000 promissory note, bearing four percent interest and due in five years. The note appears to have been adequately secured at the time of issuance. However, it was a purchase money note secured by a deed of trust, and the evidence persuades us that within the financial community it was the general understanding of California law that, in the event of default, the holder of such a note was compelled to rely solely upon his security by way of foreclosure, and that no personal liability attached to the vendee. [3] This was definitely a factor that would tend to depress the value of the note, since there was always the hazard that the security would not continue to remain adequate throughout the five-year period of the note. A further depressing factor was the fact that the note contained no acceleration clause in the event of sale of the *124 property prior to maturity of the note. The matter is not susceptible of a mathematically precise determination, but taking into account all the evidence before us, particularly the low interest rate and the apparent absence of personal liability of the maker, it is our best judgment and we have found as a fact that the note had a fair market value of $1,600,000 at the time of issuance. Decision will be entered under Rule 155. Footnotes
1. ↩
Petitioner's gross interest in New Almaden Property Investors
27.3617428%
Less 9.6% allocable to Jean Crago -2.6267273%
Petitioner's net interest 24.7350155%
2. ↩
New Almaden Property Investors' total interest in Almaden Property Holders
25.9240113%
Petitioner's net interest in New Almaden Property Investors x24.7350155%
Petitioner's net interest in Almaden Property Holders 6.4123082%
3. This is also the view adopted by the Supreme Court of California. California Code of Civil Procedure, sections 726, 580(b); ; , certiorari denied . ↩